IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAROMIR KOVARIK : | |
| : | No. 2:24-cv-00680-GAM |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| GROUNDWATER & ENVIRONMENTAL : | |
| SERVICES, INC., et al., : | |
| : | |
| Defendants. : | |

**SUNOCO PIPELINE, L.P.'S**
**REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS**

**I.     PRELIMINARY STATEMENT**

Plaintiff's Opposition to the Motion to Dismiss filed by Defendant Sunoco Pipeline, L.P. ("SPLP"), Plaintiff admits confirms that his claim against SPLP was brought after the expiration of the applicable statute of limitations in the Pipeline Safety Improvement Act ("PSIA"), 42 U.S.C. § 60129, and that Plaintiff never asserted a claim against SPLP in the underlying administrative proceedings before OSHA.  Plaintiff attempts to raise equitable defenses to save his untimely, unexhausted claim against SPLP, but in doing so mischaracterizes the contents of the documents submitted in the OSHA administrative proceeding.  Because Plaintiff did not bring his claim against SPLP before the statute of limitations expired, and because he failed to exhaust his administrative remedies, Plaintiff's claims against SPLP are barred as a matter of law, and SPLP's Motion to Dismiss should be granted.

**II.    LEGAL ARGUMENT**

    **A.     Plaintiff's claim against SPLP is time-barred.**

As the Third Circuit recently observed, "[p]rocedural errors can sink a case[.]" *Jaludi v. Citigroup and Company*, 57 F.4th 148, 150 (3d Cir. 2023) (dismissing untimely statutory

whistleblower claim).  Here, there is no dispute that Plaintiff has attempted to bring a PSIA claim against SPLP for the very first time through this federal lawsuit – *more than three years after* the 180-day statute of limitations expired on November 19, 2020.  49 U.S.C. § 60129(b)(1).  In his Amended Complaint, Plaintiff admits that he filed a PSIA claim against only Defendant Energy Transfer Operating, L.P. ("ETO") within the 180-day statute of limitations, and did not file a claim against SPLP.  Am. Compl. ¶ 118 ("On August 6, 2020 Mr. Kovarik filed a whistleblower retaliation complaint . . . against Defendants GES and ETO.").  Plaintiff first brought his claim against SPLP years later, when he filed a federal complaint and transferred his administrative action to this Court on February 13, 2024.  Plaintiff now argues that his administrative complaint did name SPLP, but it plainly did not.  Although it referred to "Sunoco LP" and "Sunoco Logistics Partners Operations L.P." as different names that ETO may be known as or as possible subsidiaries, neither of those entities is Sunoco Pipeline, L.P.  *See* Pl.'s Opp'n Brief at 10.  Plaintiff is a licensed attorney.  Plaintiff knows that similarly-named entities are not the same entity.  Simply put, Plaintiff's claim against SPLP is untimely and should be dismissed as a matter of law.

      Plaintiff attempts to avoid that his claim against SPLP is barred by the statute of limitations by arguing that in the underlying OSHA administrative proceeding, ETO and SPLP suggested that they were the same company, and alleges that there were misrepresentations made as to the two entities before OSHA that justifies equitable tolling of the statute of limitations.  *See* Pl.'s Opp'n Br. at 11.  Plaintiff's arguments are belied by the plain record before OSHA where ETO made it abundantly clear that ETO and SPLP were separate entities, that ETO did not own or operate the Mariner East 2/2X pipelines ("ME2") on which Plaintiff worked, that ETO was therefore not an "employer" within the meaning of the PSIA and not a proper party to the action.  In the very first written submission to OSHA on January 8, 2021, ETO responded to Plaintiff's administrative

complaint to OSHA, and in the very first paragraph, explained why it was not a proper party to the case, as it did not own or operate the ME2 pipelines, and was not involved with the alleged incidents underlying Plaintiff's PSIA claims.[1]  The submission directly contradicts Plaintiff's assertion that ETO and SPLP held themselves out as "one and the same."  Pl.'s Opp'n Br. at 11.  Neither ETO nor SPLP made any misrepresentations as to which entity owned and operated the ME2 pipelines, and therefore which entity could be considered an "employer" subject to potential liability under the PSIA.  These issues were clear since the beginning of this matter, there has never been any misrepresentations as to the difference between ETO and SPLP, and equitable tolling cannot apply to save Plaintiff's time-barred claim against SPLP in this case.

> **B.     Plaintiff has not satisfied Federal Rule of Civil Procedure 15, and therefore his claim against SPLP cannot relate back to the date he filed his complaint against ETO with OSHA.**

Plaintiff also attempts to argue that under Federal Rule of Civil Procedure 15, his February 13, 2024 federal complaint should relate back to his August 6, 2020 administrative complaint before OSHA, such that his claim against SPLP could be considered timely and not barred by the 180-day statute of limitations under the PSIA.  *See* Pl.'s Br. at 13.  Plaintiff argues the relation back doctrine should apply, and that his failing to name SPLP in the OSHA action does not prejudice SPLP.  But prejudice to a defendant is only one part of the relation back doctrine under Federal Rule 15(c)(1)(C).  The second part of the relation back doctrine evaluates whether the defendant "knew or should have known that the action would have been brought against it, ***but for a mistake*** concerning the proper party's identity."  F.R.C.P. 15(c)(1)(C)(ii) (emphasis added); *see, e.g.*, *Foster Wheeler Energy Corp. v. Intermarine, Inc.*, Dkt. No. 98-5106, 1999 WL 1129630, at *9 (E.D. Pa. 1999) (prohibiting relation back where plaintiff was repeatedly informed that it

---

[1] The first page of ETO's January 8, 2021 submission to OSHA is attached hereto as **Exhibit A**.

named improper defendant, including direct phone call from defendant's counsel, but nonetheless delayed seeking amendment for six months, all of which led proper defendant to conclude it was intentionally omitted due to "strategy rather than as a result of . . . mistake").

Plaintiff has made no mistake here. In the OSHA proceedings, Plaintiff's actions demonstrated that he intended to pursue only ETO. Plaintiff cites *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), where the Supreme Court confirmed that a plaintiff's conduct can reflect an intentional decision not to sue a particular defendant, which would not qualify as a "mistake" under F.R.C.P. 15(c)(1)(C)(ii). There, the plaintiff brought a personal injury claim after being hurt on a cruise ship. *Id.* at 542-43. Rather than sue the liable carrier, the plaintiff sued the carrier's similarly-named marketing agent. *Id.* The plaintiff's cruise ticket noted the name of the carrier for injury claims, but the ticket also prominently displayed the name of the agent. *Id.* The agent's litigation filings highlighted this error, but Plaintiff still did not seek amendment for four months after the statute of limitations had run. *Id.* at 543.

The Supreme Court allowed relation back, explaining that the question under F.R.C.P. 15(c)(1)(C)(ii) is not whether the plaintiff knew or should have known of the proper defendant, but whether the proper defendant knew or should have known that it was omitted due to a mistake. *Id.* at 548. If a plaintiff has information about a proper defendant but fails to act, this is relevant insofar as the defendant would believe plaintiff has intentionally chosen not to sue that defendant. *Id.* ("Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity."). Although knowledge of a proper defendant's existence does not preclude the plaintiff from making a mistake, if the plaintiff understands the defendant's legal status, failure to sue that defendant would be considered an intentional, informed decision—not a mistake. *Id.* at 549. ("Making a

deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity."). While a plaintiff's delay in adding a defendant is not a reason in and of itself to deny relation back, that delay is relevant if it informs the defendant's understanding about whether a mistake was made. *Id.* at 555. Applying this standard to the facts, the Court concluded that the plaintiff's conduct did not reflect a deliberate choice not to sue the proper part – but, rather, a mistake as to the roles of carrier and the carrier's similarly-named marketing agent. *Id.*

In this case, unlike in *Krupski*, there was no confusion as to what party should have been named in the underlying OSHA proceeding. Plaintiff has always known that SPLP was the owner and operator of the ME2 pipelines, and therefore an "employer" within the meaning of PSIA against whom Plaintiff's claims could be brought. That Plaintiff made no mistake here is effectively admitted in his Complaint, which states: "The fact that Defendant SPLP was at all relevant times an employer of Mr. Kovarik for purposes of this PSIA action has never been disputed." Am. Compl. ¶ 84. Plaintiff also admits that "Defendant SPLP obtained the permits for the construction of the ME2 pipeline project" (Am. Compl. ¶ 60), permits with which his job responsibilities were to ensure compliance (Am. Compl. ¶¶ 110–11). Thus, unlike the plaintiff in *Krupski*, Plaintiff knew not only of the existence of SPLP but of SPLP's role in this case and its legal status as the ME2 pipeline owner and operator. Yet inexplicably, Plaintiff never named SPLP as a respondent before OSHA at any point, instead waiting not a few months but ***three years*** to bring a claim against SPLP.

The record shows that there could be no arguable confusion or mistake as to whether ETO or SPLP was the owner and operator of the ME2 pipelines – ETO's very first submission to OSHA on January 8, 2021 expressly stated that SPLP owned and operated ME2. *See* Ex. A. After

Plaintiff received this submission, there could not have been any confusion as the first paragraph specifically informs him that SPLP, not ETO, is the owner and operator of the ME2 pipelines. Plaintiff was represented in the underlying OSHA matter by counsel, and Plaintiff himself is a lawyer.  This makes it even less likely that Plaintiff could have been confused, and supports it was reasonable for SPLP to conclude that Plaintiff's not naming SPLP in the underlying OSHA matter was an intentional choice.  In fact, in these proceedings, Plaintiff continues to argue that naming ETO was reasonable despite being told repeatedly that SPLP owns and operates the ME2 pipelines. The only reasonable inference to make from these events is that Plaintiff made a purposeful choice and only named ETO in the OSHA proceedings.  There is no justifiable excuse, mistake, or other reason why the Court should allow Plaintiff's belated attempted to add SPLP as a party now, in this federal complaint in February 2024 – three years beyond the applicable 180-day statute of limitations.  Because no mistake was made, relation back is not permitted.[2]

The facts in this case are very analogous to those in *Foster Wheeler Energy Corp.*, *supra*, which is discussed in SPLP's Memorandum of Law in Support of it Motion to Dismiss.  *See* SPLP Memo at 14-15.  In that case, despite being told by the Defendants' counsel which was the proper party and it being stated in the improperly named party's answer, the plaintiff failed to seek to add the proper party until after the statute of limitations period expired.  The court concluded this could not be viewed as a "mistake," that it was reasonable for the correct party to conclude its not being named was purposeful, and so plaintiff could not rely on F.R.C.P. 15 to have its claims relate back.

---

[2] Plaintiff also suggests that he was not on notice of the relative roles of ETO and SPLP in relation to the ME2 pipeline project until "SPLP and ETO filed their Corporate Disclosure Statements" in this case. Pl.'s Opp'n Br. at 6. This is not true. Plaintiff has long been aware that SPLP is the owner and operator of ME2, and therefore an "employer" under the PSIA. Moreover, a corporate disclosure statement under Federal Rule of Civil Procedure 7.1 is a procedural requirement that merely identifies whether an entity has a parent corporation or publicly held corporation owning 10% or more of its stock – and is typically used as a mechanism to determine the need for judicial recusal from a case due any financial interests in the corporate entities involved. *See* F.R.C.P. 7.1(a)(1)(A); *see also* comment to F.R.C.P. 7.1 (noting that the corporate disclosures required by Rule 7.1 are "calculated to reach the majority of the circumstances that are likely to call for disqualification on the basis of financial information that a judge may not know or recollect.").

The *Foster Wheeler Energy Corp*. court's reasoning applies equally to this case and the same conclusion should be found here – Plaintiff cannot avoid that the statute of limitations has run on claims against SPLP.

### C. Plaintiff's claim against SPLP is barred because he failed to exhaust his administrative remedies before OSHA for any claim against SPLP.

Plaintiff's failure to name SPLP in the OSHA proceedings also means he did not administratively exhaust this claim, which provides an independent ground for dismissal of SPLP from this case. *See, e.g., Bozeman v. Per-Se Tech., Inc.*, 456 F.Supp.2d 1282, 1357-58 (N.D. Ga. 2006) (noting that defendant in federal court must be "specifically name[d]" as a respondent before OSHA); *see also Smith v. Psychiatric Solutions, Inc.*, No. 3:08-cv-3, 2009 WL 903624 (N.D. Fla. March 31, 2009) (holding plaintiff's claims against defendants were not exhausted because they were not named "in the heading of her administrative complaint or indeed *anywhere* in her complaint" (emphasis in original)). Plaintiff attempts to escape this by arguing that there is no prejudice to SPLP by Plaintiff's failure to administratively exhaust his claim against SPLP before OSHA. *See* Pl.'s Opp'n Br. at 14-15.

Plaintiff points to *Saylor v. Ridge*, 989 F. Supp. 680 (E.D. Pa. 1998) for the proposition that a defendant's participation in administrative proceedings can defeat the administrative exhaustion requirement. *See id.* at 14. The *Saylor* case, however, does not support Plaintiff's proposition. In *Saylor*, the plaintiff, a disabled state attorney who was denied workplace accommodation, brought claims against state officials under Titles I and II of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act of 1973 (the "RHA"). 989 F. Supp. at 684. The defendants moved to dismiss portions of the complaint, which the court granted in part but for reasons unrelated to exhaustion. *Id.* The extent of the court's discussion about exhaustion was observing that a Title I claim under the ADA does require exhaustion and a Title II claim does

2825961_4

not, and declining to address, on a motion to dismiss, whether the RHA's exhaustion requirement applied to the plaintiff. *Id.* at 685 n.3. Nowhere did the court in *Saylor* hold that administrative exhaustion can be waived by a defendant's participation in administrative proceedings, as Plaintiff attempts to suggest.[3]

The doctrine of administrative exhaustion is designed to protect the primary role of the administrative agency in adjudicating a statutory claim over which it has jurisdiction. *See Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997) (explaining that the administrative exhaustion requirement respects executive branch autonomy, provides the courts with the benefit of agency expertise, and serves judicial economy by allowing the agency to compile the factual record); *see also Willis v. Vie Fin. Grp., Inc.*, No. CIV.A. 04-435, 2004 WL 1774575, at *6 (E.D. Pa. Aug. 6, 2004) (stating that OSHA must be "afford[ed] . . . the opportunity to resolve the allegations administratively"). Thus, even if Plaintiff argues his omission of SPLP as a party in the underlying OSHA proceeding did not prejudice SPLP, ***it did prejudice OSHA*** who did not have the opportunity to consider Plaintiff's claim against SPLP in the first instance. The law is clear that a federal court inheriting a case after it is "kicked-out" from OSHA cannot review claims that were not originally brought before OSHA. *See, e.g., Willis*, 2004 WL 1774575 at *6 (stating that a federal court "can only conduct a 'de novo review' of those claims that have been administratively exhausted"). Plaintiff did not raise any claims against SPLP in the underlying OSHA proceeding, and thereby did not administratively exhaust his claims against SPLP,

---

[3] Plaintiff also cites a case called "*White v. Northwest Airlines Inc.*, 915 F.2d 655 (11th Cir. 1990)" to support his argument that SPLP actively participated in the OSHA proceedings, which "confirms its awareness of the potential claims against it." *See* Pl.'s Opp'n Br. at 16. We have been unable to locate this case. It is possible Plaintiff intended to cite *Doe v. Alabama State Dept. of Educ.*, 915 F.2d 651 (11th Cir. 1990). There, the plaintiffs contested a minor's educational placement under the Education of the Handicapped Act, which requires utilizing administrative procedures before filing suit in court. *Id.* at 659. The court held the plaintiffs adequately exhausted certain procedural claims by raising them at a due process hearing. *Id.* The court did not hold that the administrative exhaustion requirement can be waived, as Plaintiff attempts to argue here.

warranting dismissal of SPLP from this action.[4]

### III. CONCLUSION

Thus, for the reasons set forth herein, and those in SPLP's original Memorandum of Law in support of its Motion to Dismiss, the Court should grant SPLP's Motion to Dismiss because Plaintiff's PSIA claim against SPLP is time-barred, and because Plaintiff failed to exhaust his administrative remedies by never naming SPLP as a party in the underlying OSHA proceeding.

Respectfully submitted,

*/s/ Diana A. Silva*
Jill Hyman Kaplan, Esq. (PA I.D. No. 50928)
Diana A. Silva, Esq. (PA I.D. No. 311083)
Manko Gold Katcher Fox LLP
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
Tel: (484) 430-2347
jkaplan@mankogold.com
dsilva@mankogold.com

*Counsel for Defendant*
*Sunoco Pipeline, L.P.*

Dated: June 21, 2024

---

[4] In his opposition, Plaintiff requests that this Court take judicial notice of another case Plaintiff filed in Pennsylvania state court. *See* Pl.'s Opp'n Br. at 17. It is unclear why Plaintiff wants this Court to notice that case, but nevertheless it is not relevant to the Court's determination of this Motion to Dismiss. Plaintiff points to the state court case and improperly suggests that ETO and SPLP tried to avoid discovery in that case. Not so. Plaintiff initiated that case by filing a writ of summons instead of a complaint, and defendants moved to have a complaint filed. Plaintiff refused to file a complaint, claiming he was unable to do so and that he needed to perform pre-complaint discovery. The trial court ruled that Plaintiff's requested pre-complaint discovery was not necessary, and ordered him to file a complaint – which he never did. The trial court then entered judgments of non pros and ultimately dismissed the case. Plaintiff appealed that order to the Pennsylvania Superior Court, which remains pending. Plaintiff's section on judicial notice concludes by quoting SPLP stating that there is "not enough evidence that we had anything to do with this." Pl.'s Opp'n Br. at 17. It is unclear if this is intended to be a true quote, but if so, its origin is unknown. Moreover, ETO and SPLP have asserted the opposite all along—that SPLP met the definition of "employer" under the PSIA, and ETO did not.