IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAROMIR KOVARIK**<br>Plaintiff<br><br>-against-<br><br>**GROUNDWATER & ENVIRONMENTAL SERVICES, INC. and ENERGY TRANSFER OPERATING L.P., and SUNOCO**<br><br>Defendants | NO. 2:24-cv-00680-GAM<br><br>CIVIL ACTION<br>JURY TRIAL DEMANDED<br><br>Joint Surreply to ETO/SPLP's Reply re.: FRCP 12(b)(6) Motion |

# JOINT SURREPLY BRIEF IN OPPOSITION TO DEFENDANTS' ENERGY TRANSFER OPERATING, L.P. AND SUNOCO PIPELINE, L.P. MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6)

**I. Introduction**

Plaintiff Jaromir Kovarik respectfully submits this joint surreply in opposition to the Reply Briefs of Defendants Energy Transfer Operating L.P. ("ETO") and Sunoco Pipeline L.P. ("SPLP") (ECF 23, 24) that were submitted in response to Plaintiff's Opposition Briefs (ECF 20, 21). These (ECF 16, 17) are Defendants' second requests to be dismissed as parties pursuant to FRCP 12(b)(6);

1

again virtually ignoring the facts of the Complaint (ECF 1) and the Amended Complaint (ECF 13). The original Defendants' motions (ECF 9, 10) were dismissed by this Court's Order of May 15, 2024 (ECF 15). The Order was issued after Plaintiff filed his First Amended Complaint (ECF 13). Defendants' arguments in all of the motions and reply briefs are essentially the same. Plaintiff, mindful of the Court's schedule, is therefore submitting this joint surreply in reliance on his opposition briefs (ECF 20, 21), which are incorporated hereby as if fully stated.

Plaintiff asserts that the arguments raised in Defendants' Replies are without merit and do not warrant the dismissal of Plaintiff's claims. I particularly note that the standard by which a Rule 12(b)(6) motion is to be evaluated is "assuming all the facts *as stated in the complaint* are true. Defendants essentially are attempting to ignore the allegations in the Amended Complaint in order to support their suggestion that they are in fact wholly separate entities against whom Plaintiff should have had to play a game of Whack-a Mole before the Department of Labor in order to seek relief.

Most interestingly, ETO and SPLP surely do not lack resources to hire the best law firms and attorneys to defend their interests. And, in fact, if it really *were* true that they are separate entities with separate interests in this litigation, there would be a conflict of interest. Yet the same attorney(s) and law firm have been

representing both allegedly separate entities *since the inception of the dispute*. The Defendants have consistently acted as a single unit throughout the administrative proceedings OSHA and Administrative Law Judge proceedings, as documented by their own Exhibit A (ECF 23-1, 24-1).

SPLP's (in particular) suggestion that it was omitted as a party in the previous proceedings is further belied by the original OSHA complaint itself, which indicates that "Energy Transfer Operating L.P. (ETO) …may also be known or operate/d …under different names or through its subsidiaries, possibly including but not limited to: Energy Transfer L.P., Energy Transfer Equity, Energy Transfer Partners, Sunoco LP [and] Sunoco Logistics Partners Operations L.P.…." I submit that SPLP *was* named in the OSHA complaint, by virtue of the preceding, and given its actual appearance in the OSHA action,[1] the suggestion that it would be prejudiced by relation back is patently absurd.[2]

To survive motion pursuant to FRCP 12(b)(6) the Plaintiff must plead facts in support of all of the prima facie elements of each claim. Here neither Defendant in any of their motions suggested that Plaintiff failed to so. Instead, Defendants are

---

[1] On January 8, 2021, a response to the OSHA complaint was filed by SPLP, rather than ETO. ETO did claim that SPLP was the entity that requested Plaintiff's termination, but since then there has been little if any attempt to distinguish the interests of SPLP and ETO in the administrative proceeding—"instead, they have acted in total unity." (ECF 21, pg10).

[2] The instant action is essentially a transfer of the OSHA action, *in which SPLP participated*. See PSIA subd. (b)(3)(D).

simply *disputing* the facts pleaded by the Plaintiff in the complaint and also in his objections to their motions and trying to substitute such with their own. This Court can make its own judgment about the veracity of Defendants' factual assertions and why such a conduct should be invoked if true facts to support ETO/SPLP assertions were available. The attached Exhibit A – a printout from https://energytransfernortheast.com/about/energy-transfer-in-pennsylvania/ dated June 26, 2024, one of many examples that anybody can find on the internet, speaks volumes about the Defendant's' veracity.

## II. ETO and SPLP's Role and Liability under PSIA

### 1. ETO's and SPLP's Ownership and Operational Involvement

Contrary to Defendants' assertions, ETO's and SPLP's ownership and involvement in the Mariner East 2/2X pipeline project ("ME2") is substantiated by the pleaded facts and reality. While ETO argues it is not the owner or operator of ME2, documents and internal communications reveal ETO's significant role in decision-making and daily operations of the construction. In addition, ETO is publicly proclaiming its participation in ME2 construction and declaring that ME2

pipeline is one of its ***assets***[3] (*see* the attached Exhibit A – a printout from https://energytransfernortheast.com/about/energy-transfer-in-pennsylvania/ dated June 26, 2024).

    At the motion to dismiss stage, the court "may not consider matters extraneous to the pleadings" *In re Burlington Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). However, the court may rely on documents "integral to or explicitly relied upon in the complaint." *Id.* (citing *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996)), which is the case here. Plaintiff's allegations are gleaned from his personal experience during his employment by the Defendants and his research exemplified by the attached Exhibit A. Thus, the Court may consider Plaintiff's allegations supported by the attached Exhibit A.

    The Pipeline Safety Improvement Act ("PSIA") defines an employer as a "person owning or operating a pipeline facility" *or* "a contractor or subcontractor of such a person," 49 U.S.C. § 60129(a)(2). Since SPLP admits to being the owner and operator of the ME2 pipeline, this establishes its potential liability under the PSIA. On the other hand, ETO's operational control and oversight functions, combined with its admitted ownership of the ME2 asset and participation in its

---

[3] Thus ETO is either overtly misleading investors and public or being very disingenuous with this Court

design, construction and remediation (see Exhibit A, pgs. 2,3) makes *it* an "employer"—clearly, unless the Defendants somehow successfully *disprove* the allegations in the complaint in further proceedings, they are *both* valid employers under the PSIA definition.

### 2. Integrated Operations and Alter-Ego Doctrine

ETO's and SPLP's argument that they cannot be held liable under common law corporate liability doctrines is misplaced. The integrated operations and alter-ego doctrines are relevant in determining their *control* over ME2 operations. Courts have often pierced corporate veils when the subsidiary acts as an agent for the parent company, especially when the latter exerts significant control over the subsidiary's operations. This principle applies here as ETO and SPLP function as a single economic entity with intertwined operations, thereby justifying ETO's and SPLP's liability under the PSIA. In *United States v. Bestfoods,* 524 U.S. 51, 62-63 (1998) the Supreme Court held that a parent corporation may be directly liable for its own actions in operating a facility that pollutes, just as it may be indirectly liable as an operator of a facility owned or operated by its subsidiary. Similarly, in *Myers v. Jani-King of Philadelphia Inc.,* 2019 WL 2052296 (E.D. Pa. 2019), this court found that the integrated enterprise doctrine applied to determine joint

employer liability where the parent company had pervasive control over its subsidiaries. Indeed, the first sentence of the attached Exhibit A appears to put Energy Transfer and Sunoco in the same category with respect to ME 2. The document also clearly states that ETO worked with Pennsylvania Department of Environmental Protection (DEP) confirming Plaintiff's assertions of ETO and SPLP acting as co-permittees.

### III. Legal Sufficiency of Plaintiff's Claims

#### 1. Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. The court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### 2. Defendants are Disputing Facts rather Than Legal Sufficiency

ETO and SPLP's Reply Briefs primarily dispute factual allegations made by the Plaintiff rather than addressing the legal sufficiency of the Plaintiff's claims. ETO and SPLP do not contest that if the facts pleaded by the Plaintiff are proven, a valid claim has been stated under the Pipeline Safety Improvement Act (PSIA). This approach underscores Defendants reliance on factual disputes, which are inappropriate at the motion to dismiss stage. At this juncture, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. A court must "examine whether, under any reasonable reading of the complaint, the Plaintiff may be entitled to relief." *Hill v. Borough of Kutztown,* 455 F.3d 225, 233 (3d Cir. 2006) (quoting *Delaware Nation v. Pennsylvania,* 446 F.3d 410, 415 (3d Cir. 2006)). As was amply alleged in the Complaint, SPLP did participate in the administrative action, and SPLP and ETO were essentially alter egos with respect to the ME-2 pipeline project.

### 3. ETO's and SPLP's Role

SPLP admits to being the owner and operator of the ME2 pipeline. The complaint alleges that ETO has been a contractor or subcontractor to SPLP, a fact that must be accepted as true for the purposes of deciding this motion. Specifically, the complaint states that "Defendant ETO has been at all relevant times a

contractor or subcontractor to the owner or co-owner of ME2 pipeline facility" (First Amended Complaint ¶ 45) and that "Defendant GES assisted Defendants ETO/SPLP with the installation of ME2 resp. ME2X pipeline project construction on Spread 6 ('project') at all relevant times as a contractor or subcontractor" (First Amended Complaint ¶ 23).

### 4. Appropriateness of Resolving Factual Disputes at a Later Stage

Given that ETO and SPLP dispute the factual basis of Plaintiff's claims, these disputes are more appropriately resolved during summary judgment or trial. The motion to dismiss phase is designed to test the legal sufficiency of the claims, not to resolve factual disputes. Therefore, ETO's and SPLP's motions to dismiss should be denied, allowing the case to proceed to the discovery phase where factual issues can be properly examined. In *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. 2009), the Third Circuit held that a court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, particularly where the plaintiff's claims involve questions of fact. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), the Supreme Court emphasized that a plaintiff is not required to plead detailed facts but must provide enough factual allegations to raise a right to relief above the speculative level.

## IV. Deference to OSHA's Findings

### 1. OSHA's Determination of ETO and SPLP as Employers

The Court should give deference to OSHA's findings that ETO (stated explicitly) and SPLP (implicitly, but certainly not disputed after SPLP voluntarily joined) qualify as employers under the PSIA.  OSHA would not have allowed a non-party to participate in the proceedings at the level SPLP did—for that matter, if SPLP had not been a proper party it would have had no motivation to participate. OSHA's determination, based on its thorough investigation and expertise in pipeline safety and health matters, should be considered substantial evidence of ETO's and SPLP's role and responsibility. Courts frequently defer to agency findings where the agency has expertise in the specific area of law at issue.  In *Chevron U.S.A. Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 844 (1984) the Supreme Court established that courts should defer to an agency's reasonable interpretation of a statute that it administers.  Similarly, in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944) The Supreme Court stated that an agency's rulings, interpretations, and opinions constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.

### 2. ETO's and SPLP's Participation in OSHA Proceedings

ETO's and SPLP's participation in OSHA proceedings is a significant factor. Their active engagement and defense in the proceedings despite claiming no direct involvement implies acknowledgment of their responsibility. "*Limit your appearance to jurisdictional issue only"* if you want to challenge the jurisdiction of the decision making body over you is a universal doctrine.  ETO and/or SPLP should have done so at the inception of the dispute in front of the OSHA, instead of litigating jointly for several years and accepting also jurisdiction of the Administrative Court.  Plaintiff's assertions here that are supported by OSHA records indicating ETO's and SPLP's united defensive stance combined with publicly acknowledged and repeated claims of operational oversight and ownership of ME2 (see Exhibit A) are reinforcing Plaintiff's assertions that both entities should be held liable (First Amended Complaint ¶ 51).

### 3. ETO's and SPLP's Inconsistent Positions

ETO's and SPLP's contradictory positions—claiming non-involvement while actively defending themselves in OSHA proceedings and in front of the

administrative law judge as a *single* unit highlight the need for judicial scrutiny. Such behavior suggests ETO/SPLP recognition of joint potential liability and an attempt to evade responsibility through legal technicalities.

## V. Whether SPLP Was Plaintiff's Employer is a Fact-Specific Determination Unsuitable for Resolution under FRCP 12(b)(6)

SPLP's contention that it should not be named as a defendant because it was not Plaintiff's employer is a highly fact-specific issue that depends upon the particular circumstances and evidence of the case. Determining whether SPLP was Plaintiff's employer involves analyzing the operational control, management practices, and day-to-day activities between SPLP and ETO. These are factual determinations that cannot be resolved at the motion to dismiss stage. In, *Gross v. Hatboro-Horsham Sch. Dist.*, Civil Action 23-0633 (E.D. Pa. Jul. 31, 2023) the court emphasized that questions regarding the employment relationship are fact-specific and inappropriate for resolution on a motion to dismiss. Similarly, in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009), the Third Circuit held that a court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, particularly where the plaintiff's claims involve questions of fact. Additionally, in *Swierkiewicz v.*

*Sorema* N.A., 534 U.S. 506, 514 (2002), the Supreme Court emphasized that a plaintiff is not required to plead detailed facts but must provide enough factual allegations to raise a right to relief above the speculative level.

## VI. Timeliness of Plaintiff's Claims

### 1. Statute of Limitations:

SPLP argues that Plaintiff's claims are time-barred because they were filed after the 180-day statute of limitations expired. However, Plaintiff contends that the claims against SPLP relate back to the original filing against ETO; the suggestion that SPLP had no notice of the original filing is ridiculous,[4] and in any event equitable tolling could apply due to SPLP's misrepresentations regarding its contractual relationship with ETO during the OSHA proceedings. Indeed, it is unclear as of today what contractual relationship existed between these Defendants. This is a matter that requires factual development, but these Defendants were alleged in the complaint to be of unitary interest and the shell game they are now trying to play is not, if the allegations in the complaint are true,

---

[4] One of the primary considerations for "relation back" as it applies to adding new parties is whether the new defendant knew or should have known that it would have been named but for a mistake. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010).

appropriate. Obviously, should SPLP reveal its contractual relationship with ETO, or vice versa, it would be clear what parties were to be named.

### 2. Equitable Tolling:

Plaintiff argues that SPLP and ETO's representations to OSHA suggested that while insisting on differing liability, they were acting as the same entity, as exemplified by their Exhibit 1 (ECF 23-1, 24-1). This fact has been confirmed by Plaintiff's experience, deposition of GES witnesses and Plaintiff's own research (see Exhibit A), all justifying equitable tolling of the statute of limitations. The complaint alleges that SPLP and ETO used their designations interchangeably during the ME2 project, and any confusion as to which party was "proper" was contributed to by this practice; moreover SPLP did not contest its involvement in the OSHA proceedings (First Amended Complaint, ¶¶ 63, 65, 66, 70).

### VII. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants ETO's and SPLP's FRCP 12(b)(6) Motions to Dismiss. The alleged facts and docket demonstrate ETO's and SPLP's significant operational role,

ownership, contractual relationship and liability under the PSIA.  This is further supported by Defendants acting and being represented as a single unit through these proceedings until this Court's involvement, and Defendants' attack on Plaintiff's compliant based on factual disputes, rather than legal sufficiency of the complaint.  All of the above warrants dismissal of ETO and SPLP motions and further proceedings to fully address Plaintiff claims.

Respectfully submitted,

This, the 28th day of June, 2024:

By:   /s/ Jaromir Kovarik, *pro se*

Jaromir Kovarik, 211 Ridge Rd.
Annville, PA 17003
Tel:  717-383-6985
*Jxk0011@gmail.com*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAROMIR KOVARIK**<br>Plaintiff<br><br>-against-<br><br>**GROUNDWATER & ENVIRONMENTAL SERVICES, INC. and ENERGY TRANSFER OPERATING L.P., and SUNOCO**<br><br>Defendants | NO. 2:24-cv-00680-GAM<br><br>CIVIL ACTION<br>JURY TRIAL DEMANDED<br><br>Proposed Order<br>Plaintiff's Opposition/Surreply to SPLP and ETO's Motions under FRCP 12(b)(6) |

**[PROPOSED) ORDER**

This _____day of _____2024, upon consideration of Defendants Energy Transfer and Sunoco FRCP 12(b)(6) Motions to Dismiss (ECF 16, 17) Plaintiff's First Amended Complaint (ECF 13) and Plaintiff's Opposition to the same, it is hereby **ORDERED** that the Defendants' Motions are **DENIED**.

/s/ Gerald Austin McHugh

United States District Judge